NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA, *Respondent*,

*v.*

HERCELYN ROBERT MAYO, *Petitioner*.

No. 1 CA-CR 25-0254 PRPC
FILED 01-28-2026

Petition for Review from the Superior Court in Maricopa County
No. CR2023-102775-001
The Honorable Kerstin G. LeMaire, Judge

**REVIEW GRANTED; RELIEF DENIED**

APPEARANCES

Hercelyn Robert Mayo, Eloy
*Petitioner*

----

**MEMORANDUM DECISION**

Judge D. Steven Williams delivered the Court's decision, in which Presiding Judge Daniel J. Kiley and Judge Cynthia J. Bailey joined.

----

**W I L L I A M S**, Judge:

¶1          Petitioner Hercelyn Robert Mayo seeks review of the superior court's order dismissing his petition for post-conviction relief ("PCR") under Arizona Rule of Criminal Procedure ("Rule") 33. We have considered the petition for review and, for the reasons stated, grant review and deny relief.

## FACTUAL AND PROCEDURAL HISTORY

¶2          The State charged Mayo with first-degree premeditated murder, a class one dangerous felony and domestic violence offense, alleging he killed his wife ("the victim"). The State also alleged numerous aggravating circumstances and that Mayo had prior felony convictions.

¶3          Mayo pled guilty to second-degree murder, a class one dangerous felony and domestic violence offense. As part of the plea agreement, the State dismissed its allegation that Mayo had prior felony convictions and avowed not to file a weapons charge against him. Subject to court approval, the plea agreement also established the sentencing range: "The Defendant shall be sentenced to the Arizona Department of Corrections for a term of no less than twenty (20) calendar years and no more than twenty-five (25) calendar years." The superior court sentenced Mayo to a maximum term of twenty-five years' imprisonment.

¶4          Mayo timely petitioned for post-conviction relief. As a threshold matter, he challenged the presiding superior court judge's assignment of his petition to the sentencing judge. He also alleged the sentencing judge violated his due process rights by permitting the presentation of "overly emotional and dramatic" victim impact evidence at sentencing.

¶5          Determining "it is appropriate" for sentencing judges "to handle the post-conviction relief petitions for cases they sentenced," the sentencing judge rejected Mayo's procedural challenge. The sentencing judge also denied Mayo's due process claim, explaining the State's

sentencing presentation "w[as] not inflammatory or overly sentimental" and, regardless, it did not prejudice Mayo because the court "carefully weighed" the mitigating and aggravating factors and determined imposition of the maximum sentence was warranted. For these reasons, the court dismissed Mayo's petition for post-conviction relief.

**¶6** Mayo timely petitioned this Court for review. We grant review under Article 6, Section 9 of the Arizona Constitution, A.R.S. § 13-4239(C), and Rule 33.16.

## DISCUSSION

**¶7** We review the denial of a petition for post-conviction relief for an abuse of discretion. *State v. Gutierrez*, 229 Ariz. 573, 577, ¶ 19 (2012). "An abuse of discretion occurs if the PCR court makes an error of law or fails to adequately investigate the facts necessary to support its decision." *State v. Pandeli*, 242 Ariz. 175, 180, ¶ 4 (2017). The petitioner bears the burden of establishing such an abuse. *See State v. Poblete*, 227 Ariz. 537, 538, ¶ 1 (App. 2011).

**¶8** Consistent with his petition for post-conviction relief, Mayo argues the sentencing judge erroneously: (1) presided over his PCR proceeding, and (2) permitted the presentation of victim impact evidence at sentencing. On review, Mayo also contends, for the first time, that: (1) his sentencing counsel was ineffective, and (2) the sentencing judge violated his constitutional rights by failing to maintain order and decorum at sentencing, demonstrating bias, permitting the victim's family members to threaten him in open court, discussing unspecified civil matters during the criminal proceeding, and permitting the discussion of unproven accusations. Additionally, in his petition for review, Mayo makes a fleeting reference to PCR counsel, challenging the attorney's effectiveness, without offering any explanation, argument, or citation. Finally, in his response in support of his petition for review, Mayo argues, for the first time, that the prosecutor engaged in misconduct by advocating on behalf of the victim's family and alleging a prior felony for which he was never convicted.

**¶9** A petition for review may only raise issues first presented in the superior court. *State v. Ramirez*, 126 Ariz. 464, 467-68 (App. 1980) (applying a waiver analysis to "issues first presented in a petition for review" because the superior court "obviously never" had the opportunity to meaningfully consider the alleged errors); *see also State v. Bortz*, 169 Ariz. 575, 578 (App. 1991) (applying waiver to claims that could "have been previously raised" in a petition for post-conviction relief but were not

preserved). Likewise, a petitioner waives any issue not raised in the petition for review. Ariz. R. Crim. P. 33.16(c)(4) ("A party's failure to raise any issue that could be raised in the petition for review or cross-petition for review constitutes a waiver of appellate review of that issue."); *cf. State v. Lopez*, 223 Ariz. 238, 240, ¶¶ 6–7 (App. 2009) (holding waiver analysis applies with equal force to "Rule 32 proceedings" and petitioner waived "entirely new claims of ineffective assistance of counsel" raised for the first time in a reply brief). Such waiver extends to any claim for which the petitioner fails to develop an argument "in any meaningful way." *State v. Stefanovich*, 232 Ariz. 154, 158, ¶ 16 (App. 2013); *see also State v. Bolton*, 182 Ariz. 290, 298 (1995) (holding the failure to offer argument sufficient for appellate review waives a claim); Ariz. R. Crim. P. 31.10(a)(7)(A) (stating an appellant's brief shall include "appellant's contentions with supporting reasons for each contention, and with citations of legal authorities and appropriate references to the portions of the record on which the appellant relies"). Accordingly, on review, we consider only the claims both preserved in the underlying petition for post-conviction relief and raised and developed in the petition for review.

## I. Petition for Post-Conviction Relief Assigned to Sentencing Judge

¶10 In his petition for post-conviction relief, Mayo challenged the assignment of his petition to the sentencing judge, arguing she would "naturally [] be less objective" when "her own alleged errors [we]re at issue" and "presumably [would] still [operate] under [an] incorrect understanding" of the law. Although Mayo maintains the sentencing judge should not have presided over his Rule 33 proceedings, he reframes his argument in the petition for review. Pointing to a complaint he filed against the sentencing judge, alleging she failed to properly preside over her courtroom and instead allowed for a "circus like atmosphere," Mayo contends "she should have recused herself" from the Rule 33 proceedings.

¶11 Pursuant to Rule 33.10(a), "[t]he presiding judge must, if possible, assign a proceeding for post-conviction relief to the sentencing judge." To the extent Mayo contends his filing of a judicial complaint compelled the sentencing judge to recuse herself, we take judicial notice that the Commission on Judicial Conduct dismissed the complaint as unsubstantiated (on May 24, 2024) before Mayo petitioned for post-conviction relief (on December 20, 2024). *See* Ariz. R. Evid. 201(b), (c) (authorizing a court, on its own volition, to "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be

questioned"). On this record, Mayo has failed to establish the sentencing judge was obliged to recuse herself or that the assignment of his petition to the sentencing judge was otherwise improper.

## II.    Presentation of Victim Impact Evidence

**¶12**         As more thoroughly outlined in his petition for post-conviction relief, Mayo challenges the presentation of victim impact evidence at the sentencing hearing. He contends "a slideshow"—that included "photos of the victim[,] of mourners at her funeral, and of a baby grandchild"—together with "highly charged victim testimony"—that included one surviving family member threatening to "seek revenge" on Mayo and other survivors opining that he should be sentenced to death—"rendered the proceeding fundamentally unfair." In his petition for review, Mayo also asserts the sentencing judge should have precluded the presentation of the victim impact evidence because the State did not disclose it to the defense before the hearing.

**¶13**         Because Mayo did not object to the victim impact evidence at sentencing, we review only for fundamental error. *State v. Rose*, 231 Ariz. 500, 510, ¶ 43 (2013). We will uphold the admission of victim impact evidence at sentencing "unless it is so unduly prejudicial that it renders" the sentencing procedure "fundamentally unfair." *Id.* at ¶ 45 (citation modified).

**¶14**         As a preliminary matter, we note that a "victim's statement is not subject to disclosure to the state or the defendant or submission to the court." A.R.S. § 13-4426.01. The defense, however, must "be afforded the opportunity to explain, support or deny the victim's statement." *Id.* In this case, the sentencing hearing transcript clearly reflects that the sentencing judge granted the defense ample time to respond to the victim impact evidence.

**¶15**         Turning to the challenged photographs, "[t]here is no simple, mechanical test to determine when [victim impact evidence] crosses the line between permissible and unduly prejudicial." *Rose*, 231 Ariz. at 510, ¶ 46. Because jurors may be influenced by "passion, prejudice, public opinion, or public feeling" or "swayed by mere sympathy," our supreme court has cautioned "judges, in their sound discretion, to screen and, if necessary, limit an orchestrated, overly dramatic [victim impact evidence] presentation." *Id.* at 510–11, ¶¶ 46–47. The supreme court declined, however, "to adopt a per se rule barring all in-life photos," deferring to the

superior court's determination whether "photographs will incite the jurors' passions." *Id.* at 511, ¶ 50 (citation omitted).

**¶16** In this case, the sentencing judge, not jurors, heard and viewed the presentation of the victim impact evidence. While photographs may engender emotion and sympathy, Mayo has not demonstrated the sentencing judge abused her discretion, much less committed fundamental error, by permitting the presentation of the photographs of the victim in life and of her survivors at her funeral. *See id.* at 511–12, ¶¶ 50–52 (concluding the trial court did not abuse its discretion by permitting the presentation of photographs of the murder victim's young sons "looking down into the grave as his casket was lowered" and "sitting on a bench by the gravesite": "After all, the jury was well aware, without the photographs, that the murder caused the two boys to suffer a devasting loss of their father's love, affection, and support for the rest of their lives.").

**¶17** Next, we consider the survivors' testimony concerning sentencing. The survivors of a murder victim may present information about the victim and the impact of the murder on the victim's family at a sentencing hearing. *See* Ariz. Const. art. 2, § 2.1(A)(4); A.R.S. § 13-4426. "[T]he State has a legitimate interest in counteracting the mitigating evidence which the defendant is entitled to put in, by reminding the sentencer that just as the murderer should be considered as an individual, so too the victim is an individual whose death represents a unique loss to society and in particular to his family." *Payne v. Tennessee*, 501 U.S. 808, 825 (1991) (citation modified); *see also State v. Ellison*, 213 Ariz. 116, 140–41, ¶ 111 (2006) (citation modified) (concluding victim impact "statements are relevant to the issue of the harm caused by the defendant . . . [and] do not violate the Eighth Amendment"). The victim's survivors may not, however, offer any opinion on an appropriate sentence to a jury. Ariz. R. Crim. P. 19.1(e)(3) (authorizing a victim's survivors to make statements "relating to the victim's characteristics and the crime's impact on the victim's family" during the penalty phase of a trial but precluding survivors from "offer[ing] any opinion or recommendation about an appropriate sentence").

**¶18** At the sentencing hearing, several of the victim's relatives addressed the sentencing judge and Mayo. One of the victim's sons spoke of his high regard for the victim, the important role she played in the family, and the years of physical abuse Mayo inflicted on her. During this emotional colloquy, he stated: "I only speak for myself—but I would say— I would reject the plea. We don't like that. You go to trial. You killed my mom. Your life should be over." Another son similarly spoke of his love for the victim and the impact of her death. He also echoed his brother's

perspective on sentencing: "You know, I wish he can get life for what he did. He doesn't deserve to see the light of day . . . . To me, he deserves the death penalty, you know. A life for a life. . . . I just want to see him get the max that he can get." The victim's cousin likewise repeatedly asked the court to impose the maximum sentence: "I would just ask that whatever the max penalty be is what he gets." In addition, the victim's brother intimated that he would exact revenge if Mayo were ever released from prison, stating Mayo "deserves no less than what he gave [the victim]." Finally, the victim's mother urged the sentencing judge to impose the maximum penalty: "Twenty years is not enough. Twenty-five years is not enough. Life is not enough."

¶19 Without question, had these statements been presented to a jury, they would have violated Rule 19.1(e)(3) and arguably been grounds for a mistrial. *Compare Rose*, 231 Ariz. at 513, ¶¶ 57–58 (finding no fundamental error from the statements of a murder victim's widow, which arguably spoke in "clear and understandable code" but did not "express[ly] request" that the jury return a death sentence). But here, the statements were presented only to the sentencing judge, who did not base her sentencing determination on emotion or sympathy, but instead made specific factual findings concerning the relevant mitigating and aggravating factors. *See State v. Williams*, 183 Ariz. 368, 386 (1995) (holding, "absent evidence to the contrary," an appellate court presumes a trial judge "is capable of focusing on the relevant sentencing factors and setting aside the irrelevant, inflammatory, and emotional factors"). As reflected in the hearing transcript, the sentencing judge found three mitigating factors—Mayo accepted responsibility for the victim's murder, experienced a "very difficult childhood," and "suffers from PTSD"—and five aggravating factors—the deliberate nature of the crime, the inability of the victim to protect herself, the failure to render aide, the extreme emotional harm caused to the victim's family, and the use a deadly weapon. On balance, the sentencing judge found that each of the aggravating circumstances, alone, warranted a "greater-than-presumptive sentence." Considered together, the sentencing judge determined the aggravating factors justified imposition of the "maximum sentence."

¶20 In sum, Mayo has not cited, and our review of the record has not revealed, any evidence the sentencing judge imposed the maximum sentence based on the photographs of the victim and her survivors or the survivors' statements advocating for the harshest possible penalty. Instead, the record clearly reflects the sentencing judge made factual findings concerning the aggravating and mitigating factors and, weighing those factors, determined that on balance they justified the imposition of a

twenty-five years' sentence of imprisonment. On this record, Mayo has failed to establish any fundamental, prejudicial error.

**CONCLUSION**

¶21     We grant review and deny relief.

